Good morning, ladies and gentlemen. Before we begin, I would like to note the presence on the bench, and welcome to the bench of the Sixth Circuit, the Honorable William Bertelsman, U.S. District Judge for the Eastern District of Kentucky. We appreciate your coming over to help us keep current with our dockets. I'd like to advise appellants, if you have reserved any time for rebuttal or wish to reserve any time for rebuttal, I'd appreciate your letting me hear your arguments, and the clerk may call the first case. Good morning. I'd like to reserve five minutes for rebuttal. You may. May it please the Court, my name is Stephanie Kenyar, and I am here on behalf of It is undisputed that the incriminating statements he made to the police played an important role at trial, and that if those statements were improperly admitted, Mr. Binford is entitled to a new trial. Just one technical housekeeping question. Everybody's agreed this has to be remanded for resentencing, is that right? This is correct. We do have one argument on resentencing. The government has agreed that one of Mr. Binford's three prior convictions cannot be used to We also believe that his second conviction, a conviction for second degree burglary, was improperly assessed. It is our position that because we can raise this argument on plain error review, since it is based on the U.S. Supreme Court's decision in Johnson, this court can simply rule and dispose of this challenge now in the name of judicial efficiency. But the government agrees that if it is remanded, the district court will be able to take our argument into consideration. In that, if those sentences are eliminated, that would substantially reduce the guideline sentence under which Mr. Binford's punishment would be assessed. In addition to resentencing, we also believe that Mr. Binford's sentences, his convictions, need to be vacated, and there should be a new trial because of two constitutional errors. Either one of these errors must result in the first one is that his incriminating statements were inadmissible because he was detained and arrested in violation of the Fourth Amendment, which tainted all of the incriminating statements he made after that detention. And our second argument is that the admission of his incriminating statements violated the Fifth Amendment because his Miranda warnings were not properly given or followed. On the Fourth Amendment, we urge this court to reaffirm the rule that was established by the Supreme Court in Michigan v. Summers, that a search warrant authorizes officers to detain occupants of the premises to protect the integrity of the search and the officer's safety in a manner that is less intrusive than a custodial interrogation or arrest. Now, in Summers, the U.S. Supreme Court established a narrow exception to the warrant requirement. It stated that when police are performing a search for contraband under a warrant, they can detain occupants in the name of three law enforcement interests to prevent flight, to minimize the risk of harm to officers, and to facilitate the orderly completion of the search. In its opinion, the Supreme Court made it clear that this did not authorize police officers to conduct a custodial interrogation or to perform an actual arrest. Are you missing Mueller? No. Mueller v. Mina, Your Honor, is a case in which the Supreme Court stated that when occupants of a residence have been properly detained, and they're being held in a relatively limited manner. No question he was properly detained. When he was initially stopped, he was properly detained. When the police arrived in the residence, they detained Mr. Binford in a manner that is comparable to the way that the occupants were detained in Mueller. He was handcuffed. He was ensured to no longer pose a safety threat. My point is, once they're executing the search, not only can they do that for the reasons that you set forth, but Mueller also says that they can talk to him. They just can't talk to him in a way that would prolong the search, and that didn't happen here. Well, Mueller noted that the questioning did not prolong the search, but what it said about the Fourth Amendment restriction is it said, mere questioning is not an independent Fourth Amendment violation. And the difference between You're claiming that it is here. Not the questioning alone. We are saying that the questioning was part of the additional intrusion, but what happened here is, rather than questioning Binford where he was, where he was simply handcuffed and being held in a secure manner, Detective Canall arrived in the apartment and physically moved him, kept him undressed, kept him handcuffed, brought him to a bathroom and confined him. There's no authority that says you have to keep him in a certain room. Well, there is authority that makes it clear that these additional intrusions, confinement, separating a person from the residents around him, mirandizing him, informing him he is the subject of an investigation, all of which are distinct from what happened in Mueller, creates a custodial interrogation. These are all the things we tell the police they're supposed to do. Not when all they are... They're supposed to tell them, they're supposed to give them a rander, they're supposed to tell them that they want to talk to them, they're supposed to tell them why they want to talk to them. When the police have the authority to be conducting a custodial interrogation, we do demand all of those protections exist. But here, what the government is essentially asking is for there to be an exception to an arrest warrant. That whenever the police arrive with a search warrant, where the magistrate has clearly said, you have probable cause to search, and we have delineated what it is you can search for. Certainly, the police couldn't just walk into the home and search for anything they wanted. Here, the government would ask you to say, as long as we are in the apartment and we're conducting a search, then we can go ahead and perform a custodial interrogation. And what's the matter with that? As long as you give them a Miranda warning, what's the problem with that? Because curing a Fifth Amendment violation, as the court told us in Unwaving New York, does not cure a Fourth Amendment violation. So what Summers was very clear about is that allowing a limited detention to occur when an arrest warrant is being performed doesn't... A search warrant. Wait, I'm sorry. Yes, thank you. Performing a limited detention when a search warrant is being performed doesn't cause us constitutional concern because that is inherently a limited intrusion. So if there's a limited detention that's okay, what's the matter with talking to the guy in the meantime, as long as you give him his Miranda rights? That would be very different. Just merely talking to him, if there were no additional restrictions being put on him. If he was simply being detained for the three legitimate purposes identified in Summers. We do not have an objection to that. And in this case, do you object to his being handcuffed, given the type of search it was? No. Okay. We do not object to the handcuffing. It is the shift. It is having him in a space where certainly a consensual encounter could take place, but what the police did was substantially more restrictive. And the reason that matters... There's no evidence that he complained about it, saying it's too claustrophobic in here or anything of that sort. There's no indication that he asked to put his pants on. He had a sheet. Granted, those events occurred, but do you have a principle that says before you can talk to him, you've got to give him his pants and you've got to have a room bigger than 10 by 10? Well, there is no bright line necessarily. Okay, so then we're just looking about the sort of things we normally look at in a Miranda situation. Was his will overborne? Was it voluntary? Not something special because it's a search. Your Honor, the Miranda issue is an independent issue from the Fourth Amendment issue. Those are all Fifth Amendment questions. You're still saying we're still stuck on the Fourth Amendment, but I don't understand where the Fourth Amendment violation occurs here. You say that they can be in the apartment. You say that they can detain him. You say they can handcuff him, and you say they can talk to him as long as they Mirandize with him. So the only thing that seems to be left is they talk to him in a bathroom instead of in the living room, and I'm trying to figure out who cares. That is a violation that, for example, the Ninth Circuit found in Ganwich v. Knapp. In that case, the police held— I'm asking you specifically, what happened here specifically violates the Fourth Amendment, not the Fifth Amendment? The increased form of the detention. What does that mean, the increased form? Does that mean the handcuffs, the location, the length? Because they all seem to be okay. It is totality, but a large part of it is the location. The action of moving Mr. Binford from a relatively open area where he could see his family and moving him and isolating him into a confined space. Those are classically the things that are looked at to determine whether someone is being detained or whether they've been subject to an arrest. I would say in almost every one of these cases that we see, they separate the people in the place they're going to search, and they take them to a more quiet area where they can talk to them. And in those cases— And so that's wrong in those cases? Well, no. In those cases, they make it clear that by doing that, the police were required to do Miranda, et cetera, because there was a custodial interrogation. Now, those cases don't always address the Fourth Amendment issue because they can resolve it based on Miranda alone. So the Fourth Amendment issue is the bathroom? Yes, the confinement and the interrogation. He's already confined, and he's detained. So do you have any authority that says where they conduct this interrogation implicates the Fourth Amendment? The United States v. Fountain from this circuit certainly acknowledged that interrogating somebody in an open living room required a different level of suspicion and Fourth Amendment justification than moving them to a separate floor of the house and interrogating the suspect in a bedroom. That isolation was viewed to be a different type of intrusion on Fourth Amendment rights. I don't remember Fountain. Did it say there was a violation because they took him to a bedroom? No, Fountain determined that because the search had actually— at the point that they brought him to the bedroom, the search had uncovered evidence of a crime and there had been some confessions in an open environment, that probable cause existed, and probable cause from the search itself was sufficient to authorize this interrogation. Probable cause kind of like having two hand-to-hand transactions in a lawn chair under the carport in the parking lot? But if we say that— Kind of that probable cause? If that probable cause was sufficient, then we are opening up the door for police to make their own determination as to whether an arrest in a home is justified. And in situations like this where they are performing a search warrant in the wee hours of the morning based on a contraband search warrant, which they told us they usually do early in the morning, they will never have to seek an arrest warrant, an independent verification from the magistrate. I see that my time is over. Okay. Thank you. You'll have your time for rebuttal. May it please the Court, Patricia Gaedeke for the United States. It is the government's position that officers never have to seek an arrest warrant in these circumstances. The search warrant gave the officers authority to detain the occupants. Because it was a search warrant for guns as well as drugs, they were allowed to detain the occupants in handcuffs. And as you said, Judge McKeague, they were allowed to separate the occupants. Many cases have said that. Well, it can't be true. They never have to have a warrant. We already talked about it. The questioner says that they can question them, as long as the questioning doesn't prolong the search. Oh, of course. I'm sorry. I didn't mean to overstate. As long as the questioning doesn't exceed the length of the search. And there's no question here that the search only took less than an hour. The estimates vary a little bit. And both the defendant and the officer agreed that the questioning took 15 to 20 minutes. So there's no question on the record that the questioning, the duration of the questioning was considerably less than the duration of the search. Both were quite short. I want to take it back. Maybe I didn't understand your first statement when you got up. I heard you say that police never need an arrest warrant in this type of situation, even assuming it's within a short time. Does that mean that if the officers believe there is probable cause that he committed a crime, the hand-to-hand transaction that they saw, the fact that they got a search warrant means that they don't have to get an arrest warrant to arrest him in the home, regardless of what happens. That's what I thought I heard you say. I think that's true. But what I meant to say was they don't need an arrest warrant to question the occupant. Okay. Because I took your original statement to say, you know, we've got a search warrant, we can arrest you without an arrest warrant, that's it. They don't need an arrest warrant to question the occupants of the home. All right. That's different. They're there lawfully. The search warrant itself allows them to question. Of course, they gave Miranda warnings. The occupants couldn't refuse to answer their questions. There was no question of that here. I think what we were concerned with is you seemed to be saying that they could arrest him, regardless of whether they had probable cause to arrest him. No, of course not. Of course not. Are you conceding this is a custodial interrogation? Yes. Even though he's in his own apartment? But he wasn't free to go? He was in handcuffs. He was in a very small room alone with an officer. He wasn't really free to go. Right. That's the usual statement. He wasn't free to go, and that's why the officer gave the Miranda warnings. So on the sentencing, which we didn't get to in the appellant's arguments, you agreed to remand under Johnson for the one burglary charge. Well, we agreed to remand for everything. We agreed that. You agreed to remand because of the inclusion of the one burglary charge. That's correct. Now, the appellant wants us to rule on a second burglary charge, and frankly I'm not sure that I understand that. Is there some reason why we either should or shouldn't take that up at this stage? The appellant wants you to rule on the question whether Johnson applies to the career offender guideline. That's what would be necessary to decide the question the appellant presents. And do they also want us to decide that second degree burglary in Ohio can't come under the other portions of a crime of violence statute? Yes. And your position is leave that to the district court in the first instance, or what's your position? That's our position, that the case must be remanded for resentencing. We agree it should be a complete resentencing. He's not an armed career criminal, and it should be left open for the district court to decide whether he is a career offender. Really, and there are two points there then. Number one, does Johnson affect the guidelines? And number two, I guess. Is he a career offender? If it does, is there another? I mean, even if Johnson would knock out the residual clause, could this second degree burglary count under one of the other portions? For example, generic burglary? Yes, although I have to be candid with the court, I don't think it counts under generic burglary. I'm trying to figure out why you don't want us to take that up. Ms. Cagniart says it's plain error review, and we have everything we need to do to decide that. So I'm asking you, respond to that. Why wouldn't we decide that? Why wouldn't you decide whether Johnson applies to the career offender guideline? This is not that hard as to the second burglary charge. Does it still count under something other than the residual clause? Well, the question whether the second degree burglary counts, if you believe that, if Johnson applies to the career offender provision, which the department says it does, then it's not a difficult question, and I agree. Is there no possibility that there would be Shepard documents that would bring it within a generic burglary? Well, we don't know, because there were no Shepard documents presented in the district. Because there wasn't. That was my question, was is that something the government would try to do below, or you just don't know? I don't know. But you first had us discussing whether Johnson applies to the career offender category, and you just said very softly, which the department says it does. Did I hear that correctly? Did I hear that correctly? Yes. Department means DOJ? Yes. So you're bound by that. Yes, and there's one circuit decision on this. So we don't need to send it back. You're not asking us to send it back on that issue. The department has already conceded that. Right, because in the district court. Then if it's not that, then why do we send that one back? Because of the Shepard question? Yes. Okay. Proceed. I guess I'm dithering because I feel, in retrospect, that I should have explored the Shepard question more carefully. But there aren't any documents in the record. Because it wasn't relevant before, but it might be relevant. There are cases in this circuit that prior to the time when it really made a difference, this court has said things that make it appear that it wouldn't qualify. You also said a moment ago that you didn't think the second one counted either, but you're not willing to concede that. It would be safe to say this might not be your most persuasive moment right now? Yes, that would be safe to say. That would be safe to say. It would be safe to say that because of what this court has said in earlier rulings about Ohio burglary, I am doubtful that we are going to be able to demonstrate in the district court that second-degree burglary is a violent felony. But I am not absolutely certain that we can't. Okay, fair enough. And as far as the question goes, it is our legal position that Johnson applies to the guidelines. And therefore, if the court can say Johnson applies to the guidelines. But I can't give you much guidance on how that plays out in terms of the second-degree burglary. Sorry. You have other points to make? No, I don't. Other questions, counsel? Colleagues? All right, thank you. You have five minutes for rebuttal. Well, she seems to be conceding Johnson applies to your other burglary charge too. Yes, Your Honor. But she's saying she doesn't want to forego the opportunity to still show that that other burglary charge counts under something other than the residual clause. So why is this so clear-cut when we don't have any Shepard documents? How can we decide that here? Well, I think United States v. Price, which is a prior opinion by this court, in that opinion, this court held that second-degree burglary can't meet the definition of burglary. So it has to fall under the residual clause. The documents that the government did introduce below, they're not going to be able to show that the particular crime that he committed would meet generic burglary. All that they were able to present to show this prior conviction, and this is in footnote number one of our reply supplemental brief, all that they were able to show was the indictment, and the indictment merely recites the elements of the statute itself. And because the elements of the statute cannot meet the generic definition of burglary. You say that's all that they were able to show. Does that mean that you know that there is nothing else, there is no plea colloquy, there is no proffer? Perhaps there is. I believe they certainly would have introduced that. And I do think in this instance it was the government's burden to go ahead and introduce this at his sentencing. If you get a full remand, they get a do-over on that, don't they? I'm not sure that they do, having not introduced any of this information in his initial sentencing. Was it an issue? Well, certainly. Was that particular conviction challenged? Well, I think that the government just attempted to, they were trying to sentence a man for 15 years, and that is what they chose to do. Pretty simple question. You challenge the conviction that now you win under Johnson, but was the other conviction that you raised in the supplemental matter? So why would we be criticizing them for not having introduced something to establish something that wasn't at issue? Your Honor, if it is remanded on that, we will be more than satisfied. Okay. On the Fourth Amendment issue, Summers makes it clear that when it's provided what has been described as a narrow exception to the warrant requirement, in order to allow detentions to occur in search warrants, it did it with a very clear assumption in mind. The court stated, quote, this type of detention is not likely to be exploited by the officer to gain more information, because the information the officers seek normally will be obtained through the search and not through the detention. And then in footnote 15 of that opinion, the court clearly stated, the seizure in this case is not likely to have coercive aspects likely to induce self-incrimination. If we take the coercive aspects and we put it over to the Fifth Amendment bucket that we've never even gotten, what would you have us, if we go down the road that you want us to go down on the Fourth Amendment, what would you have us say then, as either a bright line rule or even guidance, as to why what happened here was a violative of the Fourth Amendment that shouldn't be repeated? How would we even describe that? Would we simply say, don't take them in a bathroom or a small room? What the Supreme Court said in Florida v. Royer is that a detention violates the Fourth Amendment when it is more intrusive than is required by its underlying justification. Summers gives us exactly three underlying justifications, and those relate to safety and protecting the integrity of the search. Now, I cannot give you a bright line rule that this will always be okay and this will never be okay, but that's the nature of these Fourth Amendment questions. Even if we don't set forth a bright line rule, were we to agree with you on this case, we would still be having to point to what fact or facts put us over the line, even though we don't tell them where the line is. So I can't figure out what those facts are here aside from it was in a bathroom. When the officer took a man, unclothed and in handcuffs, confined him, put him in a small space, told him he was a suspect, the target of the investigation, Mirandized him and interrogated him, all of those things together amount to a custodial interrogation. And we know from Detective Knauss' own testimony that he did not do that for any reason permitted under Summers. He did not do it to facilitate a search a magistrate said he could do. He did it because he wanted to circumvent that search and he wanted to get information that meant he would have cooperation and get what he wanted from a suspect before performing the only thing he was actually allowed to do inside of this man's house, which is perform a search. This is a case that tells us exactly what happens if this exception is allowed. Officers will use search warrants, they will circumvent the search itself and they will seek information... They're not circumventing the search, they're just doing something in addition to the search that you say they're not allowed to do. But he says he's doing it so that if the search yields something, he will have this rapport and he will be able to get this increased cooperation. He's trying to obtain, through what he would be able to do with an arrest, what he's supposed to do through a search. And the Supreme Court has made it... You make this assumption that this conversation was intended to have him say what was in the apartment that was the object of the search. Oh, but Detective Knauss told us that was why he... That's not what he said. He said that he is attempting to establish a relationship that will result in this guy cooperating with the government. I mean, that's what they always do. That's not in place of the search. There are two differences here. Detective Knauss, what he says, in addition to the testimony you're referring to, is that he likes to give suspects the chance to go ahead and tell him what is going to be found in the search and that helps build the rapport. He was looking for that information. The second is that... But he's going to get that anyway through the search. Then why allow him to circumvent the magistrate's protection? That's part of the problem with this. There's no justification. There's no need. Circumvent the magistrate's protection. What was circumvented? The magistrate didn't say that he couldn't do anything that he did here? But when he goes in the home, the magistrate needs to have told him what he can do. And the magistrate was asked, was only asked, do we have probable cause to search this man's possessions? And the magistrate said yes. Search warrants and arrest warrants, the Supreme Court made clear in Stagald, it made clear in Chimelby, California, it made clear in Maryland v. Bowie, that they protect different interests. And so the fact that a magistrate has said you have probable cause and you may enter this man's home in order to invade this Fourth Amendment interest does not authorize the police to invade any Fourth Amendment interest. Otherwise, a search warrant would allow an officer to search for anything, not just what is in the warrant, and an arrest warrant would authorize a search. It obviously allows them to avoid, to compromise their Fourth Amendment rights, so the person could simply walk out the door. But Summers made it very clear that the Supreme Court intended that to be extremely narrow. And that was reemphasized just in 2013 when the Supreme Court decided Bailey v. United States. It made it very clear that the Summers detention, if it does not meet one of the three requirements, simply cannot be justified under the Fourth Amendment. Let me just take you back to see if I've got the logic when you said all of these things together, the moving, the small room, the handcuffing, amounted to a custodial interrogation, and therefore it violated his Fourth Amendment rights by having a custodial interrogation. Is that the logic chain? Yes, that the Supreme Court has told us. Yes, Your Honor. But the altogether is necessary because I guess you would say if he just left him on the couch in handcuffs, he could talk to him? Sure. Mere questioning is not an independent Fourth Amendment violation. All right. So then the thing we have to decide is the size of the room and the distance of the movement. Does that make it custodial? Okay. The usual Fourth Amendment concerns. All right. Any other questions? Colleagues? Thank you. Ms. Canyard, thank you for taking this case in your firm under the Criminal Justice Act. It's a service to our system of justice. Case will be submitted. The clerk may call the roll.